In the Matter of Leona JOHNSON, Debtor.

In the Matter of Royce E. DENMAN and Paula C. Denman, Debtors.

Bankruptcy Nos. 80–00711–HS, 80–01140–HB.

United States Bankruptcy Court, S. D. Texas, Houston Division.

Jan. 21, 1981.

---

Michael Pledger, Houston, Tex., for Leona Johnson, Royce E. and Paula C. Denman.

William Heitkamp, Houston, Tex., Trustee.

J. D. Page, Bracewell & Patterson, Houston, Tex., for Fannin Bank.

Billy G. Baca, Dellinger, Lawrence & Baca, Houston, Tex., for General Motors Acceptance Corp.

## MEMORANDUM OPINION

JOHN R. BLINN, Bankruptcy Judge:

In October, confirmation hearings were held on two Chapter 13 cases, *In re Leona Johnson* and *In re Royce and Paula Denman*. Attorneys for General Motors Acceptance Corporation ("GMAC"), Fannin Bank and the debtors agreed both cases presented a common issue under § 1325(a)(5) of the Bankruptcy Reform Act of 1978: what rate of interest must a Chapter 13 debtor pay over time to a creditor with a secured claim under a plan of confirmation in order that the creditor receive "present value" of the claim?

Debtors Royce and Paula Denman purchased a 1978 Chevrolet Monte Carlo in May, 1978. Under the terms of the Retail Installment Security Agreement and Federal Truth-in-Lending Statement they executed with GMAC, the Denmans were to pay GMAC the deferred price of the automobile in forty-two (42) installments of $236.61 each, commencing on July 3, 1978 with a final installment due December 3, 1981. After missing the June 23, 1980 payment, the Denmans filed a Chapter 13 petition. No further payments were made, and at the time of trial they were in arrears to GMAC for over one thousand dollars. Under § 506 of the Code, GMAC's secured

claim is set at $3,987.50 [1], which the Chapter 13 plan proposes to pay at $128.67 per month over a period of 36 months.

Debtor Leona Johnson possesses a 1977 Oldsmobile Toronado, which is security for a retail installment contract held by creditor Fannin Bank under which she was obligated to pay $245.53 per month. Under § 506, Fannin Bank's secured claim is set at $2,455.30, which the debtor's plan proposes to pay at $120.00 per month over 24 months.

*Issue*

■ Section 1325 of the Code allows for confirmation of a plan if certain requirements are met. Specifically:

(a) The court shall confirm a plan if—

(5) with respect to each allowed claim provided for by the plan—(b)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim...

Legislative history and case law have made clear that the value the creditor is to receive through plan payments is that which would have been received had the property or its equivalent been turned over to the creditor as of the effective date of the plan. "The property is to be valued as of the effective date of the plan, thus recognizing the time-value of money." House Report No. 95–595 at page 413, U.S.Code Cong. & Admin.News 1978, pp. 5963, 6369. While the debtor may through a Chapter 13 plan reduce monthly payments to the creditor and/or extend an obligation past its stated maturity rather than surrender the property to the creditor, the debtor must compensate the creditor for the delay.

Cases from other jurisdictions that have confronted the problem of compensating the creditor have almost unanimously agreed that the best method is allowing interest on the claim over the period of the plan. *In re Donald Joseph and Mary Francis Jones*, 5 B.R. 736, 6 B.C.D. 965 (Bkrtcy. 1980); *In re Earnest Lum*, 1 B.R. 186 (Bkrtcy.1979); *In re Leroy Ziegler*, 6 B.R. 3, 6 B.C.D. 194 (Bkrtcy.1980). However, the courts have differed sharply on the appropriate *rate* of interest, choosing as standards the legal rate, the short-term Treasury Bond rate, the contract rate, etc., as well as variations and compromises between them.

■ Agreeing an interest factor is appropriate, it is important for the Court to recognize precisely what it means by "compensating" the creditor for the delay in realizing the value of the claim. The creditors in this case have argued that they are entitled to *use* value, i. e., the equivalent of the investment they would make with the value of the claim (i. e., cash) were they to have instant control of it. In this automobile financing situation, they contend that another automobile could be financed at the contract interest rate, and therefore they are entitled to that level of return on the collateral. The Court rejects this argument. Contract interest rates are determined by many factors other than simply the time value of money, including profit, risk, and overhead costs. A Chapter 13 debtor need not guarantee in the plan that a creditor's speculative investment be successful, any more than a court in other cases need consider the myriad ways funds can be put to use when specifying the legal rate of interest on a judgment.

A related argument by the creditors—that they are entitled to a greater-than-contract rate because of the now increased age of the car—is also not persuasive. While in general used cars are financed at a higher interest rate than new ones, the higher rate is due in part to the same factors of risk and speculation that make the contract rate unacceptable as a measure of compensation. Furthermore, the debtors are not buyers

---

1. GMAC has contested the value of $3,987.50 placed on their claim as being neither the fair market nor replacement value of the automobile. However, the debtor's calculation of the value—the median between the "Average Trade-in" and "Average Retail" figures in the latest *N.A.D.A. Official Used Car Guide*—has been endorsed by several cases from other jurisdictions and is accepted by this Court. *In re Willis*, 6 B.R. 555, 6 B.C.D. 1101 (Bkrtcy.1980); *In re Miller*, 4 B.R. 392, 6 B.C.D. 410 (Bkrtcy. 1980).

walking in off the street, free to weigh factors about many different cars against methods of financing. In order to keep this particular car—the goal of the Bankruptcy Code exemptions—the debtor would be forced to completely refinance the automobile on the creditor's terms.

▪ If use value is not an appropriate goal of compensation what would be a better measure? Judge Robert Merrick in *In re Willis*, 4 B.R. 555, 6 B.C.D. 1101 (Bkrtcy. 1980) suggests that the court note the process by which a creditor itself obtains operating funds, since delay in receiving the debtor's full payment will require the creditor to cover by borrowing elsewhere. It seems equitable that a creditor who through a bankruptcy case is compelled to continue as a lender to a debtor should be able to recover the cost for accepting delayed payment. In other words, the creditor is entitled to the replacement value of the debtor's payments as they become due during the contract time and its extension.[2]

Even with the goal in mind of compensating the creditor for replacement costs, it is still difficult to select an interest rate which will reflect that cost with 100% accuracy. Economic conditions and the prime rate change too rapidly for any interest rate—even one averaged over many weeks—to be anything more than an approximation. Thus it seems preferable to choose an easily ascertainable rate rather than subject all parties to complex computations before a plan can be completed. *In re Ziegler*, 6 B.R. 3, 6 B.C.D. 194 (Bkrtcy.1980) selected a rate computed by 26 U.S.C. § 6621 of the Internal Revenue Code as an appropriate standard, stating:

> The rate itself and the technique provided by the statute for deriving the rate,

seem to us to provide an equitable solution to determining "an appropriate factor" to be applied in the 11 U.S.C. § 1325(a)(5)(B)(ii) situation. It is reasonably responsive to current economic conditions is subject to periodic revision, yet is not an unfair burden on Chapter 13 debtors.

As of the date the two cases were filed,[3] this rate was 12%. Thus the Court holds that the debtors' plans of confirmation must include a 12% simple interest rate on the secured portion of the claim.

Counsel for debtor is to submit a proposed Order in conformity with this Memorandum Opinion within 10 days.

---

2. Ironically, in this time of high inflation, it is possible that this interest rate charged to the creditor will be as high or higher than the original contract rate; note, however the difference behind the rationale if not the result at this high rate.

3. Obviously of great importance is the date selected for determining both what I.R.S. rate is in effect and the valuation of the secured portion of a claim versus the unsecured portion. In Footnote No. 1 the value of the secured claim was set according to the N.A.D.A. Guide as of a specific date but even this established figure may fluctuate during the pendency of the bankruptcy case. Selecting various points in time will shift both valuation and interest rates, favoring one party over the other. The Court must therefore choose that point in time most appropriate in light of all possible considerations. Barring extraordinary circumstances, the date of filing in a Chapter 13 case is that most appropriate time.