**In re Albert James SMITH, Jr., a/k/a Albert J. Smith, Albert J. Smith, Jr., Debtor.**

**Bankruptcy No. 84–00110A.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Aug. 15, 1984.

---

Anthony M. Zezima, Black & Black, P.C., Decatur, Ga., for debtor.

Lewis N. Jones, Jones & Worozbyt, Atlanta, Ga., for Gen. Finance Corp. of Georgia.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This case is before the Court on the objection by the above-named debtor to the claim filed by the General Finance Corporation of Georgia ("General Finance"). Following a hearing on May 24, 1984, this matter was taken under advisement.

The claim by General Finance arises from a purchase-money contract executed by the debtor with Hub Motor Company on November 26, 1982 to purchase a 1979 Chevrolet Camero for a price of $6,548.40. The debtor's objection to the claim by General Finance is two-fold. First, the debtor objects to the valuation of the automobile used in determining the amount of the allowed secured claim under Bankruptcy Code § 506(a).[1] Secondly, the debtor objects to the interest rate used by the Chap-

---

1. Section 506(a) reads as follows:

   (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claims. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

   Interpreting this section, *Collier* states:

   ... Section 506(a) imposes a valuation procedure for the determination of the status of allowed secured claims which reflects the extent to which an allowed claim is either undersecured or oversecured, based on a determination by the court as to whether the property encumbered by the lien has a dollar value that is greater or smaller than the dollar value of the allowed claim. The allowed claim is deemed an allowed secured claim to the extent of the value of the collateral and an allowed unsecured claim to the extent that the amount of the allowed claim exceeds the value of the collateral.

   5 *Collier on Bankruptcy* ¶ 1325.01, p. 1325–27 (15th ed. 1984).

ter 13 Trustee to compute the total payout of the claim by General Finance such that General Finance will receive the present value of its allowed secured claim in accordance with Bankruptcy Code § 1325(a)(5)(B)(ii).[2] The Court will address these issues in seriatim.

## VALUATION OF THE COLLATERAL

At the § 341 Meeting of Creditors, the Chapter 13 Trustee valued the automobile at $4,200.00 based upon its average NADA book value. The debtor testified at the May 24, 1984 hearing that he had received two oral offers to purchase the automobile in the price range of $2,900.00 to $3,000.00. Counsel for the debtor argues that these alleged oral offers indicate the value that a prospective purchaser would place upon the automobile in an arms-length transaction. However, the Court is not persuaded to adopt the debtor's valuation.

First, there is no evidence to corroborate the debtor's testimony that the alleged oral offers were made. Secondly, the debtor declined to sell his automobile to either of the alleged offerors. The Court must presume that the offers, if they were actually made, were rejected by the debtor as being too low. Finally, General Finance elicited testimony from an expert witness at the May 24, 1984 hearing, Mr. Gene Hornsby, who appraised the automobile at $5,300.00

based upon his own experience and the black book value of the automobile.

■ The Court notes that the Chapter 13 Trustee undertakes to value automobiles in Chapter 13 proceedings in a manner that has been determined to be the most equitable and efficient. Generally, the parties find the Chapter 13 Trustee's valuation to be acceptable. However, the Chapter 13 Trustee's valuation is not conclusive when the Court is presented with expert testimony from an experienced automobile appraiser who has actually inspected the subject automobile. Accordingly, the Court values the automobile in the case *sub judice* at $5,300.00.

## PRESENT VALUE UNDER § 1325(a)(5)(B)(ii)

■ The Chapter 13 Trustee applied the interest rate from the purchase-money contract executed by the debtor with Hub Motor Company in order to calculate the total amount of payments that the debtor must make in order to comply with the requirement of Bankruptcy Code § 1325(a)(5)(B)(ii) that General Finance receive the present value of its allowed secured claim. The fact that the Chapter 13 Trustee applied the contract rate has apparently invoked some confusion between the parties as to whether the Chapter 13 Trustee's interest computation was made pursuant to Bankruptcy Code § 506(b)[3] or Bankruptcy Code

---

2. Section 1325(a)(5)(B)(ii) reads as follows:

(a) The court shall confirm a plan if—

\* \* \* \* \* \*

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) *the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim;* or

(C) the debtor surrenders the property securing such claim to such holder; (emphasis added)

3. Section 506(b) reads as follows:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection

(c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

In order for a creditor to receive interest under the contract on which the claim is based as part of the allowed secured claim, the creditor must be *oversecured.* See, e.g., In re Forest Hills Association, 40 B.R. 410, 11 BCD 1145, 1148 (Bkrtcy. S.D.N.Y.1984); 5 *Collier on Bankruptcy* ¶ 1325.-01, p. 1325-27 (15th ed. 1984) ("Where the value of the property securing the lien exceeds the amount of the allowed claim, the allowed secured claim may include interest ... provided for in the contract between the parties.") In the case *sub judice,* the claim by General Finance totals $5,927.04, while the value of the automobile is only $5300.00. Accordingly, § 506(b) is not a factor in the interest question before the Court.

§ 1325(a)(5)(B)(ii).[4] Such confusion between Bankruptcy Code §§ 506(b) and 1325(a)(5)(B)(ii) is not uncommon. See 3 *Collier on Bankruptcy* ¶ 506.05, pp. 506–37 through 506–39 (15th ed. 1984).

With respect to § 1325(a)(5)(B)(ii), *Collier* has stated as follows:

> ... In order to implement section 1325(a)(5)(B)(ii) the court must capitalize deferred payments by converting the deferred payments proposed to be distributed under the chapter 13 plan into an equivalent capital sum as of the effective date of the plan. Section 1325(a)(5)(B)(ii) cannot be faithfully implemented simply by comparing the sum total of all deferred payments proposed by the plan with the amount of the allowed secured claim. An appropriate discount factor must be arrived at by the court, so as to fairly discount [the] value proposed to be given in the future on account of the allowed secured claim.

> *The simplest method of equating present value of deferred future payments with the amount of the allowed secured claim is to propose interest payments over and above the face amount of the allowed secured claim at whatever interest rate is equivalent to the discount rate selected by the court or agreed upon by the parties.* Accordingly, in addition to deferred principal payments aggregating the face amount of the allowed secured claim, a chapter 13 plan need only propose to pay interest on the face amount of the allowed secured claim at the appropriate discount rate over the course of the payment extension. (emphasis added)

5 *Collier on Bankruptcy* ¶ 1325.01, p. 1325–26 (15th ed. 1984). The question before the Court is whether the discount rate used to equate the discounted value of the future stream of payments to General Finance with the allowed amount of its secured claim as of the effective date of the Chapter 13 plan should be the interest rate

provided in the purchase-money contract or some other rate.

This Court has previously held that the contract rate is presumed to be the correct rate to apply for purposes of § 1325(a)(5)(B)(ii) of the Bankruptcy Code where the debt owed on an automobile is being paid under a debtor's Chapter 13 plan. *In re McMichen,* 23 B.R. 497, 7 CBC 2d 618 (Bkrtcy.N.D.Ga.1982) (Drake, J.). Accord: *In the Matter of Reynolds,* 17 B.R. 489, 5 CBC 2d 1578 (Bkrtcy.N.D.Ga. 1981) (Norton, J.); *In the Matter of Clements,* 11 B.R. 38 (Bkrtcy.N.D.Ga.1981; and November 6, 1981) (Kahn, J.). *Cf. In re McLeod,* 5 B.R. 520 (Bkrtcy.N.D.Ga.1980); *In re Weaver,* 5 B.R. 522 (Bkrtcy.N.D.Ga. 1980) (Robinson, J.) (In both *McLeod* and *Weaver,* Judge Robinson determined the appropriate interest rate to be 10% per annum, citing *In re Lum,* 1 B.R. 186 (Bkrtcy.E.D.Tenn.1979).) The Court takes note of the fact that the general policy of the Chapter 13 Trustee for this Court is to use the contract rate, unless, upon objection by a party in interest, the Court orders otherwise.

■ In the instant case, the annual percentage rate specified in the purchase-money contract is 22.75%. As stated by Judge Norton in *In the Matter of Cooper,* 11 B.R. 391, 7 BCD 854, 856 (Bkrtcy.N.D.Ga.1981): "The best method to ascertain the value of money to a creditor paid over a period of time is to determine what that particular creditor routinely receives as negotiated finance charges over the period of time with similar collateral." No evidence has been presented to show that 22.75% is not an appropriate measure of the time value of money to which General Finance is entitled under the present circumstance that General Finance is, in effect, making an involuntary loan to the debtor. The debtor's original purchase-money contract provided that the debtor's loan was to be paid in thirty-six months. However, the debtor's Chapter 13 plan will add up to thirty-five months to the duration of the loan.[5] Taking into

---

**4.** See footnote 2, *supra.*

**5.** Brief of General Finance at 2.

account the creditworthiness of the debtor and the type of collateral, and in the absence of evidence to the contrary, the contract rate of 22.75% shall be applied under Bankruptcy Code § 1325(a)(5)(B)(ii). This rate, though arguably steep given the rehabilitative nature of Chapter 13, is less than the maximum rates allowable under the Georgia Motor Vehicle Sales Finance Act, O.C.G.A. § 10–1–30 *et seq.* (Michie 1984).

The Court is aware of other decisions which have rejected the appropriateness of the contract rate for purposes of Bankruptcy Code § 1325(a)(5)(B)(ii). For instance, in *In re Mitchell,* 39 B.R. 696, 11 BCD 1124 (Bkrtcy.D.Ore.1984), the Court determined that a discount rate based upon the equivalent coupon yield rate of fifty-two week treasury bills auctioned every four weeks is the best rate for calculating present value under Chapter 13. The Court stated as follows:

> The court also finds that a discount rate based upon an unadjusted contract rate of interest is not a proper chapter 13 discount rate.

> It is obvious that a contract rate of interest is not an adequate indicator of current market conditions over an extended period of time. Moreover, a fixed contract rate contains elements of profit and other costs which are inappropriate in a chapter 13 case.

*Id.* 39 B.R. 696, 11 BCD at 1127. Although the decision in *Mitchell* is exhaustive and well-reasoned, this Court declines to institute a sweeping change in the operations of the Chapter 13 Trustee by requiring the Chapter 13 Trustee to look to the coupon yield rate of treasury bills rather than to the contract rate.

As stated in *Collier* (with respect to the present value provision in Bankruptcy Code § 1129):

> The appropriate discount [interest] rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount [interest] rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration of the quality of the security and the risk of subsequent default.

5 *Collier on Bankruptcy* ¶ 1129.03, p. 1129–65 (15th ed. 1984). Although the contract rate may contain an element of profit for General Finance, the debtor has failed to rebut the presumption that the contract rate of interest is the proper measure of the time value of money given the risks involved in this particular transaction.

## CONCLUSION

In accordance with the foregoing, the debtor's objection to the claim by General Finance shall be and is hereby DENIED. The debtor's automobile shall be valued at $5,300.00, and the discount rate under Bankruptcy Code § 1325(a)(5)(B)(ii) shall be the contract rate of interest, 22.75%.

IT IS SO ORDERED.