In re Hunter Herchel THAYER, Jr., Debtor.

DOMINION BANK, N.A., Movant,

v.

Hunter Herchel THAYER, Jr., et al., Respondents.

Bankruptcy No. 7–89–00087–BKC–HPA.

United States Bankruptcy Court, W.D. Virginia, Abingdon Division.

April 27, 1989.

John M. Lamie, Browning, Morefield, Lamie & Sharp, Abingdon, Va., for debtor/respondent.

Robert J. Breimann, Street, Street, Street, Scott & Bowman, Grundy, Ba., for Dominion Bank, N.A.

Jo S. Widener, Bristol, Va., Trustee.

## MEMORANDUM OPINION

H. CLYDE PEARSON, Chief Judge.

The issue before the court is the valuation pursuant to 11 U.S.C. § 506 of creditor's collateral for purposes of providing adequate protection payments in this Chapter 13 case pursuant to §§ 1322 and 1325.

The practical problem and hoped-for solution arising in this case deals essentially with the valuation of motor vehicles owned by debtors upon which creditors have valid liens and the determination of the secured claim of such creditor and provision for payment of that claim under the debtor's Plan. The meeting of creditors provided under § 341 is designed for the purpose of convening the debtors and creditors with their counsel and the Chapter 13 trustee in reviewing claims as to their secured nature and value of the collateral for providing payments required by § 1322, usually on a monthly basis with allowed interest on the deferred payments at a rate that is fair and equitable to the debtor and the creditor.

In this case, which is somewhat typical, the trustee has attempted to evaluate, for purposes of the debtor's Plan, a 1985 Mazda 626 motor vehicle upon which Dominion Bank has a valid lien with a balance due, according to their secured claim filed, of $9,200. The Bank obtained and submitted without objection a written appraisal by one Shortt, president of Richlands Motors, which recites, "After carefully examining the above mentioned vehicle, taking into consideration the age, mileage, and the overall general condition, it is my opinion that the value of this automobile to be $5,400.00."

Debtor's counsel was granted leave and filed an appraisal by one King, represented to be the owner of King Motor Company, Abingdon, Virginia, which states, "I estemate (sic) the value of a 1985 Mazda 4 door 626 Ser. # JM1GC2211F1739713 to be between $3500 & $3000 cash value."

The trustee submitted a proposed valuation based on the current National Automobile Dealers Association (N.A.D.A.) recognized book of values on motor vehicles in this area along with a copy of the pages therefrom. The trustee noted in her recommendation that she averaged the trade-in value [1] of $4,050 and the retail value [2] of $4,975, arriving at a figure for valuation of the secured lien of $4,500, less $875 high mileage plus $50 for a stereo, for a total secured claim calculated as above of $3,675. The trustee recommends thirty-six payments of $119.45 at an interest rate of 10½ percent.

The proposed Plan of this debtor is to pay creditors 100 percent of all claims filed and allowed.

Several courts have dealt with the issue presented in varied manners. The court in *In re Miller*, 4 B.R. 392 (Bankr.S.D.Cal. 1980) determined a value based on the Kelly Blue Book, similar to the N.A.D.A. book, arriving at a median value between the retail and wholesale value of the motor vehicle.

The court in *In re Jones*, 5 B.R. 736 (Bankr.E.D.Va.1980) arrived at a valuation of an amount based upon the disposition of

1. N.A.D.A. average trade-in value is defined as the latest average wholesale values based on auction reports and dealer wholesale reports throughout the territory for which the guide is designated.

2. N.A.D.A. average retail value is defined as the "latest average retail values based on actual sales reports from new and used car dealers throughout the territory for which the guide is designated."

the collateral under the Uniform Commercial Code in a commercially reasonable manner.

The court in *In re Cook*, 38 B.R. 870 (Bankr.D.Utah 1984) arrived at a value under the N.A.D.A. booklet of an average of the wholesale or trade-in value at the time of confirmation.

In the case of *In re Willis*, 6 B.R. 555 (Bankr.N.D.Ill.1980), the court arrived at a value of the average trade-in reflected on the N.A.D.A. booklet at the time the petition was filed.

■ In this case, the court must fix a value of the collateral based on the net value to the creditor after deducting the expense of repossession, storage, reconditioning if necessary, and liquidation of such collateral under the Uniform Commercial Code. Hence, what might be represented as a fair retail price, may be substantially less after deducting such expenses. These factors were obviously in the mind of Judge Bonney in his excellent opinion in the case of *In re Jones, supra.*

From the foregoing, it is apparent that many courts, including this court, have considered and expended great amounts of time and expense of the debtors, the trustee and counsel for the debtors and creditors in hearings to determine the valuation of motor vehicles and fixing secured creditors' claims payable under § 1325 in Chapter 13 plans.

Counsel for the parties in this case and, as is true in other cases, as a matter of economy, have agreed to submit the written appraisals as the foregoing examples reflect, rather than bring to the court at substantial expense to the debtors and creditors, an automobile appraiser for purposes of giving testimony on the valuation of specific motor vehicles. The diverse values submitted, when considered in most instances as an average, will generally meet a median value which the trustee herein has recommended, between the average retail and average trade-in adjusted by the specific models and equipment items set forth in the current N.A.D.A. booklet. This booklet is without question recognized authority as a general gauge of values in the financial as well as the automobile industry relating to used automobiles.

■ This court being mindful that there exists no specific wisdom in this field considering the many variables attendant to the respective vehicle in question, concludes that no precise value can accurately be determined. It is, accordingly, the court's determination, in this case and for guidance in future cases, that the formula recommended by the trustee is fair and equitable to all parties concerned and will be hereafter approved on motion of the trustee as the valuation of collateral absent evidence in cases where the vehicle has deteriorated substantially or is in a damaged condition or in a case which would appear to be rare indeed that a vehicle is in such mint condition that the N.A.D.A. book formula recommended by the trustee is inappropriate. In those instances of a deteriorated condition or the rare instance of mint condition, the debtor or creditor may present evidence at the § 341 meeting or at confirmation as they may deem appropriate to rebut the trustee's recommended valuation in cases hereafter.

In the case of *In re Willis, supra,* Judge Merrick set forth additional guidelines relating to other collateral which the trustee may find helpful in reviewing at the § 341 meetings with creditors and debtors and, further, in assisting debtors in presenting workable and feasible plans for confirmation.

The court will enter an appropriate Order.