**In re Mahlon J. CHAPMAN and Judith A. Chapman, Debtors.**

**GENERAL MOTORS ACCEPTANCE CORPORATION, Plaintiff,**

v.

**Mahlon J. CHAPMAN and Judith A. Chapman and Charles Dehart, III, Esquire, Trustee, Defendants.**

**Bankruptcy No. 1–90–00220.**

United States Bankruptcy Court, M.D. Pennsylvania.

Sept. 5, 1990.

---

Dorothy Seldman, Harrisburg, Pa., for debtor.

Craig Staudenmaier, Harrisburg, Pa., for movant.

Charles DeHart, Harrisburg, Pa., trustee.

## MEMORANDUM

ROBERT J. WOODSIDE, Bankruptcy Judge.

In this case Mahlon Chapman and Judith A. Chapman (debtors) filed their Chapter 13 petition on February 14, 1990. The plan filed by the debtors proposed to "cram down" the loan of General Motors Acceptance Corporation (GMAC) which is secured by a lien on the title of a 1989 Grand Prix Se automobile. GMAC filed objections to the plan, a hearing has been held, the issues have been briefed and the matter is now ready for decision.

The parties agree that there are four issues to be resolved. As stated in GMAC's brief these issues are: "(1) The date upon which the value of the vehicle in question is to be established for the purposes of determining GMAC's secured claim; (2) The value to be used (retail value or wholesale value); (3) The interest to be paid upon the debt owed to GMAC over the term of Debtors' Plan (contract rate (12.-25%) or legal rate (6%); and (4) Debtors' entitlement to a 60 month plan or if that period should be shortened to forty-eight (48) months or less?" (GMAC's brief, p. 3).

I shall treat these issues in the order set forth above. GMAC argues that

the date of the filing of the petition should be the date used for the valuation of the Grand Prix in this case. The debtors argue that the proper date is the effective date of the plan which would generally be when it is confirmed.

To support its position GMAC points out that cars depreciate rapidly and it would be unfair to give the debtors the advantage of the delay which occurs in moving for and obtaining a hearing on valuation. The delay in confirmation of the plan (its "effective date") may be occasioned by a different creditor's objection to the plan.

GMAC also relies on 11 U.S.C. § 502(a) and (b) to support its position:

11 U.S.C. § 502(a) and (b) provide as follows:

(a) A claim or interest, proof of which is filed under § 501 of this title, is deemed allowed, unless a party in interest, ... objects.

(b) Except as provided in subsection (e)(2), (f), (g), (h) and (i) of this section, if such objection to claim is made, the Court, after notice and a hearing, shall determine the amount of such claim in lawful currency of The United States *as of the date of the filing of a petition* ... (emphasis supplied).

P. 4, GMAC brief.

*Fox v. Peck Iron*, 25 B.R. 674 (Bankr. S.D.Cal.1982), *In re Van Nort*, 9 B.R. 218 (Bankr.E.D.Mich.1981), *In re Adams*, 2 B.R. 313 (Bankr.M.D.Fla.1980) are cases which hold that the date of the filing of the petition is to be used for valuation purposes.

The debtors on the other hand cite cases which hold that the proper date for the valuation of collateral in a cram down situation in a Chapter 13 case is the effective date of the plan. They quote from *In re Cook*, 38 B.R. 870, 872 (Bankr.Utah 1984):

The value of the subject of the subject property should be determined as of the date to which the valuation relates. For example, if the valuation is to determine the amount of a secured claim for purposes of a Chapter 11 or 13 plan the value should be determined as of, or close to, the effective date of the plan. *3*

*Collier on Bankruptcy*, p. 506.04 at 506–32 (15th ed. 1983).

P. 4, Debtor's brief.

Debtors also argue that section 1325(a)(5)(B)(ii) mandates this result. It is there provided that "with respect to each allowed secured claim provided for by the plan ... the plan provides that the holder of such claim retain the lien securing such claim; and ... the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim ..." The case of *In re Cook* lends further support to debtors' position.

While both the position of the debtors and GMAC have case law and logic to support them, I believe the best practical conclusion to be that the valuation of the collateral be determined at the time the plan is filed. This should generally coincide with the time the petition is filed. Often, of course, this is not the case and the plan as well as schedules are not filed promptly. In any event, the plan fixes the proposed payment by the Chapter 13 debtor. If I accepted debtors' position, it would not be possible to fix the actual value of the collateral until the plan was confirmed.

In my court a plan cannot be confirmed until at least thirty (30) days after the first meeting of creditors, which is the last day for filing objections to the plan. In order to file a plan involving a "cram down", the debtor must make a valuation of the collateral that a secured creditor has an interest in. This case exemplifies this process. The debtors filed a plan valuing the Grand Prix as of February when they filed their petition. In light of my decision regarding valuation, it will be in the best interest of the debtor to immediately file a plan and to commence payments under the plan.

■ I have determined the following concerning the date of valuation:

(1) The valuation of an automobile as collateral will be at the time debtors file their plan.

(2) All postpetition payments which are due to a secured creditor having an interest

in an automobile will be paid before a plan will be confirmed. However, once a plan is filed and payments are being made pursuant to that plan, those payments will be credited to the valuation fixed in the plan.

I believe this position will require debtors to file plans and commence payments promptly. Under this approach any regular payment to a secured creditor amounts to a gratuitous payment if made prior to the filing of a plan and payments pursuant to the plan. The Code requires debtors to make payments under the plan without regard to whether the plan has been confirmed. 11 U.S.C. § 1326(a)(1) provides "unless the Court orders otherwise, the debtor *shall* commence making the payments proposed by a plan within thirty (30) days after the plan is filed." (emphasis supplied.)

It is my hope that this position will result in debtors filing their Chapter 13 plans with the petition and commencing payments pursuant to that plan within thirty days.

■ I turn now to the second issue before this Court. Both parties cite authority for using either the wholesale or retail value to determine the secured claim of a creditor having a security interest in an automobile. In this case both parties are using as a reference the N.A.D.A. official used car guide. GMAC argues for the retail value; the debtor for the wholesale value. In all probability the debtors could show that GMAC would dispose of a repossessed car through an auction limited to car dealers, which would be more reflective of the wholesale value.

I think the fairest position to take is the average between the wholesale and retail value as found in N.A.D.A. book with the appropriate adjustments for the various options and mileage on the automobile. I shall use this approach in all future cases. If a party wishes to challenge a valuation made according to this method, then that party will have the burden of proving a different valuation.

■ The third issue raised by the parties is the appropriate interest rate to be applied. The debtors argue that the appropriate rate should be 6%, the legal rate of interest for judgments in Pennsylvania. GMAC argues for its contract rate of 12.-25%. Again both sides have case law authority to support their position.

Debtors cite the case of *In re Caudle*, 13 B.R. 29 (Bankr.W.D.Tenn.1981) for the proposition that the contract rate of interest was inappropriate for an auto loan. In that case the interest rate was 25.95% and the court, in significantly reducing that rate, noted that the rate was unreasonable and would jeopardize the plan.

GMAC cites several cases which adopt the contract rate including *In re Faul*, 64 B.R. 108 (Bankr.W.D.Mo.1986); *In re Petersen*, 42 B.R. 39 (Bankr.D.Or.1984). GMAC argues in this case that the 12.25% interest rate is within the range of acceptable market rates currently available.

I believe that the 12.25% interest rate agreed to by the parties when the loan was taken should be used to amortize the crammed down value of the vehicle. Taking into account the underlying purpose of the Code to provide the debtor with a fresh start I can envision other cases where circumstances would warrant a lower interest rate than the contract rate. The essential goal is fairness to both the creditor and debtor.

■ The final issue to be addressed is whether the debtors should be entitled to a 60 month plan. 11 U.S.C. 1322(c) provides:

> The Plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

I have taken a liberal stance in allowing debtors to extend their plans to 60 months to repay arrearages on mortgages or to amortize payments on auto loans. In this case the debtors need the 60 month period to pay the I.R.S. as a priority creditor. There is sufficient cause in this case to approve debtors' plan for a term of 60 months. However, let me add as a caveat that GMAC's arguments are persuasive, and I will not look with favor on Chapter 13 debtors, as a matter of course, attempting to extend payments on automobile loans for a five year term.

ORDER

AND NOW, this 5th day of SEPTEMBER, 1990, in accordance with the accompanying Memorandum of this Court,

IT IS ORDERED THAT:

1. The valuation of the 1989 Grand Prix Se automobile shall be determined as of the date debtors file a Chapter 13 repayment plan, for the purpose of establishing the amount of GMAC's secured claim.

2. The appropriate valuation method to be used in determining the value of an automobile pursuant to 11 U.S.C. § 1325 and § 506 shall be the amount that is the average of the wholesale and retail value as set forth in the N.A.D.A. official used car guide, with appropriate adjustments for mileage and various options.

3. The interest to be paid upon the debt owed to GMAC over the term of debtors' plan shall be the contract rate of 12.25%.

4. Debtors have demonstrated sufficient cause to justify extension of their Chapter 13 repayment plan to a term of sixty (60) months.