**In re Karen V. MADISON, Debtor.**

**Bankruptcy No. 94–14726SR.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 13, 1995.

Michael F. Merlie, Kania, Linder, Lasak, Anderson & Fenney, Bala Cynwyd, PA.

Isla A. Fruchter, Philadelphia, PA.

Frederick L. Reigle, Reading, PA.

### OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

This matter comes before the Court upon the Complaint of the Debtor, Karen V. Madison (the ("Debtor"), to determine the value of a 1994 Honda Civic EX Coupe, which the Debtor owns subject to a purchase money security interest held by Midlantic Bank. At issue is what method of valuation should be utilized in a Chapter 13 proceeding to establish a creditor's allowed security interest in an automobile. An evidentiary hearing was held on August 3, 1995, and the question was taken under advisement.

## Background

In February 1994, the Debtor purchased a 1994 Honda Civic EX Coupe, which she financed with a loan from Midlantic Bank. The Debtor filed her Chapter 13 petition on July 21, 1994. Midlantic Bank filed a secured proof of claim for $22,139.34, asserting that $18,449.45 of its claim is secured. The Debtor objects to Midlantic's proof of claim, alleging that Midlantic Bank is secured only to the extent of the wholesale value of the automobile. According to the Debtor, the wholesale value of the automobile was $12,000 at the time of her bankruptcy filing. The Debtor also seeks to have Midlantic Bank's lien deemed void pursuant to 11 U.S.C. § 506(d) to the extent the lien exceeds the value of her automobile.

Midlantic Bank argues that the automobile's retail value is the appropriate value of its secured claim. Midlantic Bank argues further that the correct retail value is the amount the Debtor paid for the automobile, since the bankruptcy filing occurred within five months of the Debtor's purchase and before NADA had even published any different retail value for the automobile.

The Debtor's purpose in bringing this valuation action is unstated. The Debtor, however, intends to retain the automobile; and it would appear that the purpose of the valuation is to establish the amount of Midlantic Bank's secured claim in the automobile, so that the Debtor can pay Midlantic Bank over time through a Chapter 13 Plan.

## Discussion

### I.

■ Section 1325(a)(5)(B) of the Bankruptcy Code provides that, if a Chapter 13 debtor intends to retain property subject to a lien, the secured creditor must receive the present value of its allowed secured claim. Unless the creditor's present value is preserved, confirmation cannot occur over the creditor's objection. 11 U.S.C. § 1325(a)(5)(B). The value of a claim must be determined according to the provisions of § 506(a) which provides in relevant part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... *is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property* ... and is an unsecured claim to the extent that the value of such creditor's interest is less than the amount of such allowed claim. *Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property,* and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a) (emphasis added).

The legislative history of § 506(a) provides that "[w]hile courts will have to determine value on a case-by-case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of the valuation *and* the proposed disposition or use of the subject property." S.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News pp. 5787, 5854 (emphasis added).

Courts interpreting § 506(a) have placed different emphasis on the statute's two sentences, resulting in a disagreement as to the proper valuation method to be utilized to value a secured creditor's claim.

One line of cases emphasizes the first sentence of § 506(a) which provides that the creditor's claim is secured to the extent of the value of such creditor's interest in the estate's interest in such property. *See, e.g., In re Mitchell,* 954 F.2d 557, 560 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 303, 121 L.Ed.2d 226 (1992); *see also, In re Marshall,* 181 B.R. 599, 604 n. 8 (Bkrtcy.N.D.Ala.1995) (collecting cases adopting wholesale valuation). The decisions adopting *Mitchell's* approach reason that, based on the language of the first sentence of § 506(a), the property interest being valued is the creditor's lien interest in the collateral and not the debtor's ownership interest. *Id.; see also, In re Owens,* 120 B.R. 487 (Bankr.E.D.Ark.1990); *Johnson v. GMAC,* 115 B.R. 515 (Bankr. D.S.C.1988). According to this theory, because a lien is simply a right to take possession of the collateral and sell it in satisfaction of an obligation, the value of the lien is equal to the amount the creditor would receive upon the sale of the collateral, i.e., the wholesale value of the collateral.

A second line of cases focuses on the second sentence of § 506(a) which provides that the creditor's lien interest must be valued in light of the purpose of the valuation and the proposed use or disposition of the collateral. *See, e.g., In re Rash,* 31 F.3d 325, 329 (5th Cir.1994); *Metrobank v. Trimble (In re Trimble),* 50 F.3d 530, 531 (8th Cir.1995); *see also, In re Marshall,* 181 B.R. at 603 n. 6 (collecting cases adopting retail valuation). Under this approach, where the debtor intends to use and retain the automobile, the courts have determined that the value of the creditor's secured claim should be based upon the replacement cost to the debtor, or, in other words, the retail value of the automobile.

The proponents of retail valuation argue that *Mitchell* is incorrect, because "[i]f the first sentence of section 506(a) were interpreted to mean that the value must be fixed at the amount the creditor would receive on foreclosure, then the last sentence of the statute which provides that the value must be determined in light of the purpose of the valuation and of the proposed use or disposition of the property, would be surplusage." *In re Rash,* 31 F.3d at 329; *In re Trimble,* 50 F.3d at 531. This Court agrees that the *Mitchell* court's reasoning goes against the rules of statutory interpretation which instruct that a statute should be construed according to its plain meaning, *Patterson v. Shumate,* 504 U.S. 753, 757, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992), and to avoid rendering any part inoperative, *United States v. Nordic Village, Inc.,* 503 U.S. 30, 34–36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992). Moreover, fixing a general rule that wholesale value applies in vehicle valuation ignores legislative intent of § 506(a), which contemplates evaluating benefits and risks to both the creditors and the estate, *In re Stauffer,* 141 B.R. 612, 614 (Bankr.N.D.Ohio 1992), and therefore is inappropriate.

At the same time, however, the Court does not agree with the imposition of a general rule that retail value applies to Chapter 13 automobile valuation. Acceptance of a general rule that retail valuation applies in Chapter 13 valuation of automobiles contravenes the express intent of Congress that valuation be done on a case-by-case basis. Those cases which advocate retail valuation overemphasize the second sentence of § 506(a) and tend to look exclusively to the debtor's proposed use (keeping the vehicle), and reason that the retail value is appropriate because that is the amount the debtor would spend to replace the vehicle. While the Court agrees that the Debtor's replacement value is the proper benchmark for automobile valuation in Chapter 13, it is highly questionable, practically speaking, to posit that the replacement value of a debtor's automobile is equal to the "book" retail value of that automobile.

Generally, a debtor's automobile will have some infirmity, which will serve to reduce the value of the automobile below retail. Valuation at a retail amount, which includes a dealer profit margin, does not consider the harm to the debtor when the creditor is allowed to receive an amount that the debtor would have to pay a retail dealer to replace the automobile. At retail the debtor would have to pay more to "replace" his automobile, but the "replacement" would likely have fewer infirmities, would be cleaner, might have new tires and perhaps even a warranty or an option to buy a warranty. If a debtor truly wants to replace his automobile, infirmity-by-infirmity, the actual "replacement value" is somewhere between the "book" retail value and wholesale value.

■ In light of the foregoing, the Court agrees with a growing number of courts that the starting point for valuing automobiles in Chapter 13 should be the average of the wholesale and retail values of the automobile as published in a well-recognized guide, for example, the NADA. *See, e.g., In re Myers,* 178 B.R. 518 (Bankr.W.D.Okla.1995); *In re Carlan,* 157 B.R. 324 (Bankr.S.D.Tex.1993); *In re Stauffer,* 141 B.R. 612 (Bankr.N.D.Ohio 1992); *In re Chapman,* 135 B.R. 11 (Bankr. M.D.Pa.1990); *In re Thayer,* 98 B.R. 748 (Bankr.W.D.Va.1989). A party may request an evidentiary hearing if it believes certain factors necessitate a higher or lower value.

## II.

■ In the instant case, the Debtor and Midlantic Bank agreed that the Court should

determine the value of the Debtor's automobile as of the petition date, July 21, 1994. The Debtor, however, failed to provide any probative evidence of the value of her automobile at any time. The Debtor did submit a copy of "Galves Auto Price List" (Foreign Cars Edition), which provided that the "value" of a 1994 Honda Civic EX was $11,000 as of June 30—July 13, 1995. Even if the price list was for the relevant time period, the Debtor's submission does not identify whether the value listed is loan value, wholesale/trade-in value or retail value.

The Debtor's Complaint suggests that the wholesale value of her 1994 Honda Civic EX was $12,000, as of date she filed her bankruptcy petition. The Debtor testified that except for a small dent on the driver's side, her car was in excellent condition at that time.

Midlantic Bank's expert appraiser, John Stroyek, inspected the Debtor's vehicle in May 1995. At that time, Mr. Stroyek estimated that it would cost approximately $550 to repair the dent described by the Debtor. Stroyek credibly testified that the retail value of the Debtor's automobile was $16,262.50 as of October 1994, when the first "book" values for a 1994 Honda Civic EX became available. Mr. Stroyek's appraisal was derived from the average of the NADA and "Red Book" published retail values for October 1994. Midlantic Bank also submitted a copy of the October 1994 NADA which provides that (1) the average loan value for a used 1994 Honda Civic EX was $12,200 and (2) the average retail value was $16,100 as of October 1994.

Neither party provided evidence of the wholesale value of the Debtor's automobile. NADA provides three values for used vehicles: average loan, average wholesale/trade-in and average retail. The loan value is the lowest and the retail is the highest. *In re Rossow,* 147 B.R. 1, 3–4 (Bankr.W.D.N.Y. 1992).

In the absence of evidence of the wholesale value of the Debtor's automobile, the Court has averaged the published NADA loan value, $12,200, and Mr. Stroyek's $16,250.50 appraised retail value to calculate Midlantic Bank's allowed secured claim at $14,231.50, less $550 necessary to repair the dent.[1] Accordingly, Midlantic Bank will be allowed a secured claim in the amount of $13,731.50. The balance of Midlantic Bank's claim will be allowed as an unsecured claim. To the extent Midlantic Bank's lien exceeds $13,731.50, however, it is void pursuant to 11 U.S.C. § 506(d).

An Order consistent with the foregoing conclusions accompanies this Opinion.

### ORDER

**AND NOW,** this 13th day of September, 1995, upon consideration Complaint of the above Debtor seeking a determination of the value of Midlantic Bank's allowed secured claim, and upon consideration of Midlantic Bank's Answer, and after an evidentiary hearing held on August 3, 1995, it is, for the reasons set forth in the accompanying Opinion, hereby

**ORDERED** that Midlantic Bank be and hereby is Granted an allowed secured claim in the amount of $13,731.50 and an unsecured claim for the balance of its claim. It is further **ORDERED** that Midlantic Bank's lien is void to the extent that it exceeds $13,731.50.

---

1. The Court believes that using the lower average loan value of Debtor's automobile to calculate Midlantic Bank's allowed secured claim is justified in this case, because, in the Court's view, Midlantic Bank is benefitting from Debtor's counsel's stipulation to use the date of filing of the petition to determine value. Section 1325(a)(5)(B)(ii)'s reference to valuation "as of the effective date of the plan" would, if the issue was before the Court, lead the Court to the conclusion that the Debtor's automobile should be valued just prior to, or at, confirmation. *See In re Blakey,* 76 B.R. 465 (Bankr.E.D.Pa.1987).