**In the Matter of Tommy L. REYNOLDS, Faith M. Reynolds, Debtors.**

**Bankruptcy No. 80–04591A.**

United States Bankruptcy Court, N. D. Georgia.

Nov. 12, 1981.

Jonathan B. Pierce, East Point, Ga., for debtor.

John G. McCullough, Atlanta, Ga.; for creditor.

## OPINION

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

This matter came on before this court for a hearing on March 23, 1981, on the objection of General Motors Acceptance Corporation (GMAC) to confirmation of the debtor's plan, on GMAC's motion to dismiss, and on GMAC's request for a valuation hearing pursuant to Sections 506 and 1325(a)(5)(B)(ii) of the Bankruptcy Code. Testimony was submitted by GMAC and the debtor, Tommy Reynolds. After consideration of the record, the evidence submitted in behalf of the parties and the arguments of counsel, this court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACTS

On December 19, 1980, the debtors (husband and wife) filed a joint petition under Chapter 13 of the Bankruptcy Code, Title 11 United States Code. Their proposed plan, as amended, provides for full payment of allowed secured claims and for 1% payment of each unsecured claim.

GMAC is the only secured creditor to be paid under the plan. The claim of GMAC is based upon an installment sales contract secured by a 1980 Oldsmobile Cutlass automobile purchased new by the debtors on June 3, 1980. The purchase price was $8,634.00. In addition to the purchase price, less the down payment of $800.00, the debtors financed the premium for credit life insurance ($361.05) and the cost of extended warranty protection ($320.00). The total amount financed was $8,596.55, which along with a finance charge of $3,438.49 calculated at an annual percentage rate of 17.60%, was to be paid over 48 months at $250.23

per month. The debtors paid three (3) installments and then defaulted. When the Chapter 13 petition was filed on December 19, 1980, the debtors were behind three (3) installments for a total of $752.19.

The net outstanding balance due GMAC (i.e., the amount required under the contract to pay off the claim as of this date) is $8,643.54. According to the NADA guide book the retail value of the vehicle, including its optional equipment, is $7,125.00. The wholesale value is $6,100.00. At the § 341 meeting of creditors the trustee recommended a value for the vehicle of $6,800.00. The trustee also suggested the value of the unexpired portion of the extended warranty agreement to be $280.00 and the unearned credit life insurance premiums to be $250.00. The contract provides that GMAC's security interest extends to these items. On the basis of these values, the trustee's recommendation to the creditor and debtor was that GMAC's secured claim be valued at $7,330.00 and that this amount plus "present value" calculated at the contractual annual percentage rate of 17.60%, be paid out at the rate of $250.73 per month for the 36 months term of the plan. This $7,330.00 figure is less than the $8,643.54 (net balance of the debt) which GMAC now contends should be the appropriate value of its principal secured claim.

The debtor, Tommy Reynolds, testified that the vehicle is necessary for him and his wife to commute to and to retain their respective employment. He has no present intent to surrender the vehicle or to replace it with a less expensive means of transportation. His financial problems were aggravated soon after the debtors purchased the vehicle when his employment situation changed for the worse.

In support of its position GMAC makes the following arguments:

(a) In valuing its allowed secured claim, the finding of the court should be bound by the $8,684.00 purchase price for the vehicle agreed to by the debtors just six (6) months prior to the filing of the petition.

(b) Alternatively, the appropriate valuation standard under Section 506 in a Chapter 13 case should at a minimum be the retail value or replacement cost to the debtor.

(c) That in addition to the value of its collateral, the determination of GMAC's allowed secured claim should take into account and include the total of monthly installments past due and unpaid at the time of filing (i.e., $752.19).[1]

(d) That the "present value" of its allowed secured claim should be calculated at the annual percentage rate agreed to by the parties in the contract to wit: 17.60%, there being no evidence of any other rate in this case.

## CONCLUSIONS OF LAW

In this contested proceeding the court is concerned with an interpretation of § 506(a) of the Bankruptcy Code and the application of § 506(a) in a Chapter 13 case. Section 506(a) states:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under Section 553 of this title, is a secured claim to the *extent of the value of such creditor's interest in the estate's interest in such property,* or to the extent of the amount subject to the setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. *Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property,* and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.[2]

---

1. This argument is not developed, and the court does not understand how a delinquency in monthly payments is related to the valuation of the collateral.

2. The legislative history reflects an intention that the determination be made on a case-by-case basis. Perhaps, within a case at different times in different proceedings the purpose of the valuation will vary, and thus a different

[Emphasis supplied.]

### Valuation of GMAC's Allowed Secured Claim

The recommendation of the trustee of a value of $6,800.00 is clearly a compromise between the NADA reported wholesale and retail values. GMAC argues first for a valuation based upon the purchase price bargained for by the debtors just six (6) months previous to this Chapter 13 petition; or, secondly, at the very least, a retail or replacement cost valuation. GMAC also argues that the valuation should take into account the $752.19 in the past due installments as of the time of filing. GMAC objects to the recommended value of the trustee. Hence, the court will resolve the dispute and make a finding of value based on the evidence at the confirmation hearing.

### Purpose of Valuation

The purpose of the valuation in this composition case which proposes payments totaling 1% of the unsecured claims, is to set the total amount the debtors must now pay to the creditor on its claim in order for the debtors to retain and use this vehicle over the life of the plan. While there may be other purposes for a valuation in a Chapter 13 case, no other purpose appears to be present here. The valuation is not made to reduce the debtors' monthly burden of payments on the vehicle. The plan proposes to pay GMAC a monthly amount essentially equal to that called for in the contract: (i.e., $250.23 over 48 months under the contract compared to $250.73 over 36 months under the plan). Thus, we are not concerned with debtors who cannot presently afford the agreed-upon monthly costs of the vehicle.[3] This valuation is not for the purpose of allocating monies for other creditors to be paid under the plan. Because the payment on claims of unsecured creditors is fixed at 1% under the plan, no benefit would inure to other creditors in setting as low a valuation as possible. We are likewise not concerned with setting a valuation to determine what, if any, equity the debtors might have in the vehicle in order to protect that equity for the debtors or unsecured creditors. There is no such equity in this case. Finally, the purpose is not to set for the collateral a redemption amount under § 722, which envisions an immediate lump-sum cash payment of current value to the creditor.[4]

### Proposed Use of Property—Going Concern Value

■ The debtors' plan is to retain the vehicle and continue to use it to maintain

value may be found on the same collateral. "Value does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going concern value." H.R. No. 95–595, 95th Cong., 1st Sess. 356 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6312. "While courts will have to determine value on a case by case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of valuation and proposed disposition or use of the subject property. This determination shall be made in conjunction with any hearing on such disposition or use of property or on a plan affecting the creditor's interest." S.Rep.No. 95–989, 95th Cong., 2nd Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, p. 5854.

3. On its face, it seems a bit shocking to propose to pay GMAC the same monthly payments over a shorter period than provided in the loan agreement and satisfy the debt through the Chapter 13 plan over a shorter period of time. Yet, the plan which proposes that the debtor retain the property as allowed under § 1325(a)(5) and pay the full amount of the allowed secured claim as determined under § 506(a) complies with the Bankruptcy Code. It is the other debts and the current employment situation of the debtors that render the debtors incapable of paying all their debts. The proposed plan is one which may be confirmed under the six (6) confirmation provisions of 11 U.S.C. § 1325(a), and does not present a Title 11 case which is improperly filed under Chapter 13 and thus is subject to dismissal. In re Wiggles, 6 B.C.D. 1326, 7 B.R. 373 (B.C.N.D.Ga.1980). Also, the amount proposed for the unsecured claim of GMAC and other unsecured claimants is greater than such claimants would receive under a Chapter 7 liquidation of debtors' estate. 11 U.S.C. § 1325(a)(4).

4. Kenneth W. Kinser, et al v. Otasco, Inc., No. 81–0264A, N.D.Ga., Sept. 27, 1981. In re Cruseturner, 8 B.R. 581, 7 B.C.D. 235, 237 (Bkrtcy. D.Utah 1981). In re Miller, 4 B.R. 305, 6 B.C.D. 436, 437 (Bkrtcy.E.D.Mich.1980).

debtors' employment status and for personal use over the life of the plan as allowed under 11 U.S.C. § 1325(a)(5)(B). Applying a liquidation (wholesale) value standard on this vehicle would be inconsistent with the continued use of the vehicle and the rehabilitative purpose of this Chapter 13 plan. The value of the creditor's claim under § 506(a) is enhanced by the proposed continued use of the property to help maintain employment and thereby effectuate the debtors' performance under the plan. The continued use of the vehicle by the debtor during the period of the proposed plan demands a rehabilitation value consistent with the "going concern" of the Chapter 13 debtor.[5] The retention of the vehicle enables the debtors to avoid the necessity of replacement transportation. The debtors have made a conscious decision to keep and pay for the vehicle rather than surrendering it under § 1325(a)(5)(C). In this instance, the debtors' proposed retention and use of the vehicle pursuant to a Chapter 13 plan connotes a going concern value. Thus, the retail, replacement cost standard is the appropriate measure of value under § 506(a).

*Valuation at Time of Recent Purchase*

The close proximity in time between the debtors' purchase of the vehicle and the filing of their Chapter 13 petition is disconcerting in the context of a § 506(a) valuation under Chapter 13. The more recent the purchase, the greater the presumption of current market value equal to the purchase price. In the absence of other material evidence of value, and possible equities in favor of the debtor necessitating a subsequent valuation date, the value reflected by a very recently-purchased vehicle should be prima facie correct or at least have great weight as to current value.

The purchase of a new vehicle followed by an immediate filing under the Code may also be seen as evidence of lack of

§ 1325(a)(3) good faith; this apparent lack of honesty or good faith in proposing the plan would be mitigated by an intervening event such as the loss of a job or other abrupt change of economic circumstance. In this instance the filing of this Chapter 13 case followed within six (6) months the purchase of the new automobile. This fact raises the question of good faith of the plan and the valuation proposed by the debtor which is substantially less than the recent purchase price.

It is the nature of automobiles that there is substantial decrease in value of the vehicle once it is purchased, removed from the sales premises and used by the consumer. New cars are just worth less once used than when sold in the show room. This "drive-out" depreciation is real and substantial. This is a fact of marketing and credit with which GMAC and other lenders regularly are confronted. In the absence of a debtor's demonstrated fraud, dishonesty or deceit,[6] the market value at the time of the confirmation must prevail over the recent purchase price. Although the debtors made only three payments on the debt to GMAC after purchase, and filed the Chapter 13 only six (6) months from purchase, there is no showing of fraud or deceit or wrongful intent by the debtors in the proposal of the plan which is contrary to § 1325(a)(3). The plan is not a mere device to enable the debtors to pay the secured creditor less on the debt. The change in the economic condition of the debtors soon after purchase when the husband's employment and earnings situation worsened satisfies the concern of this court for the good faith of the debtor's plan under § 1325(a)(3).

*Section 1325(a)(5)(B)(ii) Value*

Under § 1325(a)(5)(B)(ii), the creditor is entitled to a secured claim in the amount of the current value of the collater-

---

5. *In re Pinegate Associates*, 6 B.C.D. 301, 305–310 (N.D.Ga.1977); *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul and Pacific R.R. Co.*, 318 U.S. 523, 63 S.Ct. 727, 87 L.Ed. 959 (1942). See H.R.Rep., fn. 2, *supra*.

6. 11 U.S.C. 1325(a)(3). *See In re Wiggles*, 6 B.C.D. 1326, 7 B.R. 373, (Bkrtcy.N.D.Ga.1980). 3 Norton Bankr.L. & Pract., Part 77.06.

al. GMAC is entitled to a claim in such amount of current value of the collateral.

The allowed secured claim of GMAC is determined to be in the amount of the present retail value of the vehicle, $7,125.00, plus the cost of the present value of the extended warranty agreement, plus the unearned credit life insurance premiums. The creditor is entitled to payment of the total of such claim, plus compensation for the use of said sum over the payment period of the plan. This compensation is determined by evidence as to current investment earnings which this creditor currently receives in similar loans. *See, Chrysler Credit Corporation v. Jessie J. Cooper, Jr. and Judith E. Cooper,* 7 B.C.D. 24, 7 B.R. 537 (Bkrtcy.N.D. Ga.1980); 7 B.C.D. 854, 11 B.R. 391 (Bkrtcy.N.D.Ga.1981).

The plan provides for the allowed claim of GMAC to be paid over a 36 month period of equal payments. Pursuant to § 1325(a)(5)(B)(ii) GMAC as a secured claimant is entitled to compensation for the use of its money which is best computed in the form of the annual rate of interest on a new loan by GMAC in the amount of its allowed secured claim. In Georgia, GMAC's allowed investment return is determined by the Georgia Motor Vehicle Sales Finance Act. *See, Cooper, supra.* The debtors' plan has not proposed to pay GMAC the value of its secured claim, and the proposed plan cannot be confirmed.

Because there is no evidence here as to the appropriate compensation charge there is a presumption that the existing contract rate of 17.60% is proper. This rate is allowed.

The order of confirmation shall provide that the plan shall pay to GMAC the principal amount of the allowed claim plus the contract interest of 17.60% in order to satisfy § 506(a) and § 1325(a)(5)(B)(ii).