In re Danny Lee MYERS and Pava Lynn Myers, Debtors.

Bankruptcy No. BK–94–17105.

United States Bankruptcy Court, W.D. Oklahoma.

March 7, 1995.

Leslie Martha Forbes, Oklahoma City, OK, for debtors.

W. Brent Kelley, Oklahoma City, OK, for MidFirst Bank, SSB.

Letha Sweeney, Oklahoma City, OK, for Chapter 13 Trustee.

Ann Spears, Chapter 13 Trustee, Oklahoma City, OK.

### ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

PAUL B. LINDSEY, Chief Judge.

In a case such as this, filed under Chapter 13 of the Bankruptcy Code,[1] the provisions of § 1325(a) govern whether the court may confirm the debtor's Chapter 13 plan. Section 1325(a)(5) deals with allowed secured claims provided for in the plan. Its requirements are met if the holder of the claim accepts the plan [§ 1325(a)(5)(A) ] or the debtor surrenders the property securing the claim to the holder [§ 1325(a)(5)(C) ].

If, however, the debtor proposes to retain the property which secures the claim, and the holder of the claim does not accept the plan, the plan must comply with § 1325(a)(5)(B). In order to do so, the plan must provide that the holder of the claim retain the lien securing the claim, and that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim."

The property to be distributed under the plan on account of a secured claim will almost always be a stream of cash payments. To insure that § 1325(a)(5)(B) is complied with, the allowed amount of the secured claim is paid in installments which include an appropriate market rate of interest. Viewed from the opposite perspective, the total of the installments, when discounted to the present, will at least equal the allowed amount of the secured claim.

---

**1.** References herein to statutory provisions by section number only will be to provisions of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., unless the context requires otherwise.

The amount of a secured claim is determined under § 506(a), which, in material part, is as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

As all courts which have addressed the issue of the amount of a creditor's secured claim have recognized, "value" is not defined in the Code or in the Bankruptcy Rules. Neither does the legislative history of § 506(a) provide any significant guidance.

> "Value" does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going concern value. Courts will have to determine value on a case by case basis, taking into account the facts of each case and the competing interests in the case.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 356, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6312.

> While courts will have to determine value on a case-by-case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property.

S.Rep. No. 989, 95th Cong., 1st Sess. 68, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5854.

In a Chapter 13 case, the value of a creditor's secured claim must be determined by the court most frequently with regard to one or more vehicles which the debtors wish to retain.[2] The most common sources of evidence and argument of such value are the compilations by the National Automobile Dealers Association (NADA).[3] These compilations take the form of "books," small pamphlets published monthly or quarterly on a regional basis, listing, for each model year, virtually every make and model of vehicle with the then current average trade-in, loan and retail values for each. The NADA books also contain information with regard to the appropriate increase or decrease in value which should be applied due to the presence or absence of specified optional equipment, unusually low or high mileage, and other variable factors.

In Chapter 13 cases, general unsecured claims are paid, if at all, after all administrative, secured and priority unsecured claims, at or near the end of the term of the plan, which will be not less than 36 and not more than 60 months in length.[4] Not surprisingly, debtors and secured creditors often disagree upon the value which should be assigned to the secured claim of the creditor in a vehicle. For obvious reasons, debtors favor the trade-in or wholesale value, and creditors favor the retail value.

---

**2.** Prior to June 1993, the issue was frequently raised in this court with regard to the value of debtors' homestead under the rule of *In re Hart*, 923 F.2d 1410 (10th Cir.1991), which permitted the bifurcation of the creditor's claim into secured and unsecured components. *Hart*, however, was overruled by *Nobelman v. American Savings Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), which held that § 1322(b)(2) prohibits such bifurcation where the claim of the creditor is secured solely by a security interest in real property that is the debtors' principal residence.

**3.** While such compilations are made and published by others as well, those of the NADA are primarily relied upon in this district.

**4.** While some courts will not confirm a Chapter 13 plan which proposes to pay nothing, or a very small percentage, to holders of general unsecured claims, this court is of the view that nothing in the Code prohibits the confirmation of so-called "zero-percent" plans, and that such plans can not be found to have been filed in bad faith, without more, so long as the term of the plan does not extend beyond 36 months. Debtors proposing such plans extending beyond 36 months, however, will find it increasingly difficult to establish the "cause" required by § 1322(d) for confirmation of such plans as the proposed term increases.

Bankruptcy courts have dealt with these conflicts over the years, and the numerous reported decisions appear to favor a published wholesale value as the appropriate measure.[5]

The first court of appeals decision which specifically addressed the issue was *General Motors Acceptance Corporation v. Mitchell (In re Mitchell)*, 954 F.2d 557 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 303, 121 L.Ed.2d 226 (1992).

In *Mitchell*, the issue was the value of an automobile purchased by debtors some fifteen months prior to bankruptcy. The parties' experts testified as expected—plaintiff's in favor of the retail value and debtors' in favor of wholesale value found in the "book."[6] The difference between the two was some $3,400.

The bankruptcy court found retail to be the appropriate value. On appeal by debtors, the Bankruptcy Appellate Panel (BAP) opted for wholesale value. Plaintiff appealed to the court of appeals.

After reviewing the discussion and compilation of cases contained in *Collier on Bankruptcy*,[7] the *Mitchell* majority concludes that wholesale price best approximates the value sought to be ascertained, the amount that the creditor would obtain if permitted to make a reasonable disposition of the collateral.[8] *Mitchell*, 954 F.2d at 560. The *Mitchell* court notes that this result was obtained in what it describes as the leading bankruptcy decision in the circuit, *In re Malody*, 102 B.R. 745 (9th Cir. BAP 1989).

The *Mitchell* court next addresses the plaintiff's reliance upon the second sentence of § 506(a), which requires that the determination of value be made "in light of the proposed disposition or use of such property." Plaintiff urges that in view of the debtors' intention to continue to use the vehicle, its value must be based upon the replacement cost of the vehicle to them. The court states that this argument ignores the clause of § 506(a) which defines the value of the secured claim as the value, not merely of the debtor's interest in the collateral, but of the creditor's interest in the debtor's interest in the collateral. The court cites and quotes from Queenan, *Standards for Valuation of Security Interests in Chapter 11*, 92 Com. L.J. 19, 30 (1987), in this connection.

The dissent in *Mitchell* adopts the plaintiff's argument, that because the vehicle is to be retained, wholesale value is irrelevant and the cost to debtors of a replacement vehicle is therefore the appropriate value.

In *In re Balbus*, 933 F.2d 246 (4th Cir. 1991), decided some six months prior to *Mitchell*, the court was called upon to decide whether hypothetical costs of sale should be deducted from the unadjusted fair market value in determining the value of the creditor's secured claim. The property involved was real property which debtor proposed to retain and use. The parties had agreed upon the unadjusted fair market value of the property. The issue was crucial, since the reduction of the amount of the secured claim by deduction of such costs would have had the effect of raising the amount of debtor's unsecured claims above $100,000, which was then the upper limit for such claims in order to be eligible for Chapter 13 relief.[9]

The majority in *Balbus*, decided as was *Mitchell* by a divided panel, determined that such costs should not be deducted in instances in which the debtor proposed to retain and use the collateral, opining that to hold otherwise would virtually write out of the statute the second sentence of § 506(a). The dissent would have followed *Malody*, the Ninth Circuit BAP decision which would be relied upon six months later by the majority in *Mitchell*.

---

**5.** *See* 3 *Collier on Bankruptcy* ¶ 506.04, at 506–36 (1995).

**6.** In *Mitchell*, the "book" employed was the Kelley Blue Book, presumably the approximate equivalent of the NADA "book" generally employed in this district.

**7.** *See* Note 5, *supra*.

**8.** *Mitchell* was decided by a split panel of the court of appeals.

**9.** *See* § 109(e). Effective as to cases filed on or after October 22, 1994, the eligibility limit for unsecured claims was increased by the Bankruptcy Reform Act of 1994 from $100,000 to $250,000.

In *Matter of Rash,* 31 F.3d 325 (5th Cir. 1994), a case involving a commercial truck originally purchased for more than $70,000, the court states that: "If the debtor retains the property as a part of a reorganization, the proper measurement of the estate's interest in the property is the 'going concern' value of the collateral to the debtor's reorganization." *Rash,* 31 F.3d at 329. The court equates "going concern" value with replacement cost, and cites the dissenting opinion in *Mitchell* in support of the statement. After considerable dictum, which appears to be largely addressed to justification of the result reached and to policy considerations, the court concludes as follows:

> Thus, retail value is the proper measurement for purposes of
>
> determining an undersecured creditor's allowed amount of a secured claim under § 506(a). Both wholesale valuation and techniques that average wholesale and retail values, *see, e.g., In re Carlan,* 157 B.R. 324 (Bankr.S.D.Tex.1993), undercompensate the secured creditor and provide an invalid windfall to the debtor.

*Rash,* 31 F.3d at 331.

While the *Rash* court is unequivocal in the language of, and in support of, its holding, it is noted that the property involved in that case was a commercial vehicle used, and proposed to be retained for use, in debtor's trade or business. This court believes that if the vehicle in *Mitchell* had been such a purely commercial vehicle, the same result might well have been reached, without the strident, inflexible and arguably unnecessary language found in *Rash.*[10] The *Mitchell* court made the following statement:

> In holding that the wholesale value should apply as a general rule in valuing vehicles, we do not suggest that the contemplated use by the debtor in Chapter 13 or Chapter 11 proceedings should never affect the valuation of the creditor's interest. *Collier* suggests that the so-called "going concern"

or "replacement cost to the debtor" is appropriate where the collateral is being used as part of a going concern and the prospects for successful reorganization are good. *See [3] Collier [on Bankruptcy* 506.04 at] 506–28 to 506–29. In his article on this subject, Judge Queenan offers an even narrower application of debtor's use as a factor in valuation of the secured claim. He suggests that debtor's use should affect valuation where the use is "particularly beneficial," as for example when the collateral is being used in the debtor's hands in a more profitable way than it would in others' hands, or where the use is "particularly detrimental" to its value, as for example when the debtor is using the collateral 24 hours a day and causing rapid depreciation. Queenan, [*Standards for Valuation of Security Interests in Chapter 11,* 92 Com.L.J. 19] at 37.

*Mitchell,* 954 F.2d at 560.

The *Rash* court cites *Mitchell* for its adoption of the "foreclosure approach," but then asserts that the later case of *Lomas Mortgage USA v. Wiese,* 980 F.2d 1279 (9th Cir. 1992), *vacated on other grounds,* —— U.S. ——, 113 S.Ct. 2925, 124 L.Ed.2d 676 (1993), suggests that the *Mitchell* decision "contradicts the language of § 506(a) and illogically 'allow[s] the debtor to keep the home but value[s] the secured portion based upon a hypothetical sale of the residence.'"[11]

*Wiese* involved, *inter alia,* certain real property being retained by Chapter 13 debtors, and was decided almost a full year after *Mitchell.* In the portion of the opinion in which it determines that the value of the property should not include mortgage insurance pursuant to an agreement between the creditor and a third party, the *Wiese* court, quoting from *In re Fisher,* 136 B.R. 819, 827 (D.Alaska 1992), states that "*Mitchell* is consistent with our holding because it did not

---

**10.** *See In re Green,* 151 B.R. 501 (Bankr.D.Minn. 1993) for a compilation of decisions in a case in which retail value is found to be appropriate in determining the amount of the secured claim secured by a non-commercial family vehicle.

**11.** One of the holdings in *Wiese* was to reaffirm *Hougland v. Lomas & Nettleton Co. (In re Hougland),* 886 F.2d 1182 (9th Cir.1989). The decision of the Supreme Court in *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228, overruling *Hougland,* necessitated the vacation of *Wiese. See* Note 2, *supra.*

involve insurance or 'any type of recourse agreement that would guarantee the creditor more than market value.'"

In a later section of the *Wiese* opinion, dealing with the debtors' cross-appeal, the court follows *Balbus,* holding that selling costs should not be deducted when determining the value of the creditor's secured claim. The court added that "it is contradictory to allow the debtor to keep the home but value the secured portion based upon a hypothetical sale of the residence." *Wiese,* 980 F.2d at 1286. In this section of the opinion, the *Wiese* court makes no mention whatever of *Mitchell,* and asserts that "this circuit has not addressed the question." *Wiese,* 980 F.2d at 1285.

Obviously the questions addressed by *Mitchell* and *Wiese* are not identical. They do appear to be opposite sides of the same coin, however, and it is difficult to reconcile the two cases, the only substantive difference apparently being that *Mitchell* dealt with personal property and *Wiese* dealt with real property. It is also difficult to see how *Mitchell* could be seen to be consistent with *Wiese,* even as to the mortgage insurance issue, when that issue was not present in *Mitchell.*

In *In re Carlan, supra,* 157 B.R. 324, cited in *Rash,* the court adopts, as the starting point in valuation, the average of the "book" wholesale and retail values. It disagrees with *Mitchell* for its failure to give effect to the second sentence of § 506(a), and with cases mandating the use of retail value, because "purchasers rarely pay retail or 'sticker price' for a car." *Carlan,* 157 B.R. at 325, 326. The former objection, it seems to this court, is offered without supporting analysis, and the latter does not give effect to the fact that the NADA "book" refers to average values, and certainly does not imply or warrant the inference that the values supplied have any relationship whatever to values of vehicles being sold for the first time.

The same result, adoption of the average of the "book" wholesale and retail values, was obtained earlier in *In re Stauffer,* 141 B.R. 612 (Bankr.N.D.Ohio 1992). The analysis which led to the result, however, contains considerably more substance.

The court in *Stauffer* notes that the estate's interest in the vehicle is benefitted by the right to retain and to continue to use the vehicle. Conversely, it notes that the creditor is denied the right to realize the value of the vehicle immediately, that it is required to assume the risk that, even with interest, the vehicle may depreciate at a greater rate than the secured claim of the creditor is reduced, and that if the debtor fails to complete the plan, the creditor may receive the collateral and be unable to realize from it an amount equal to the then unpaid balance of the secured claim.

The *Stauffer* court then makes the following statement in support of its conclusion that the secured claim in a vehicle should be valued at the average of NADA wholesale and retail values on the petition date:

> To use NADA wholesale value alone ignores the creditor's risks under a Chapter 13 plan. To use NADA retail valuation would compel the debtor to pay an amount far in excess of what the creditor would receive at repossession with immediate sale. The most equitable approach in such a situation would seem to this court to be to average the two figures, as was done in *In re Thayer,* 98 B.R. 748 (Bankr.W.D.Va. 1989)....

The *Stauffer* court specifically recognizes that other factors could warrant further adjustment in value, and states that any party may request an evidentiary hearing if it believes a higher or lower value is appropriate in the circumstances.

This court has for more than two years applied the rule announced in *Stauffer* to cases involving personal vehicles proposed to be retained by Chapter 13 debtors. Recently, counsel for a creditor in a Chapter 13 case, although recognizing the court's policy in this regard, requested that the court either revisit the policy or provide what would amount to special dispensation to his client. This request was based upon the assertion that the creditor, a large local credit union, was specially situated, and therefore entitled to valuation equivalent to the "book" average retail value. Its special position was said to be due to its "captive" market in the form of

a large membership, its maintenance of a retail sales lot for repossessed vehicles, its retention of a full-time, salaried salesman, and its provision of 100% financing on all vehicles sold, regardless of age.[12] The court took the issue raised under advisement, but before an order was entered, the case was converted to a case under Chapter 7, thus rendering the issue moot.

While the issue previously submitted was under advisement, counsel for debtors and the secured creditor in this case announced at a hearing on confirmation of debtors' Chapter 13 plan that they were willing to be bound by the court's decision in the previous case, and requested a continuance to permit the court to complete its consideration of the issue. The creditor had interposed an objection to confirmation based upon the valuation of a personal vehicle purchased by debtors and financed by the creditor some four months prior to bankruptcy. The issue therefore is ready for decision in connection with this case.

This court is of the view that the importance of the second sentence of § 506(a) in the context of valuations of personal automobiles sought to be retained in Chapter 13 cases has been overemphasized by the courts which have addressed this issue. The only reason for a § 506(a) valuation of a personal automobile in a Chapter 13 case is to establish the amount of the creditor's secured claim in order to permit debtor to retain and use the property and provide for the secured claim in the Chapter 13 plan in accordance with § 1325(a)(5)(B). Otherwise, the debtor would simply surrender the property to the creditor, § 1325(a)(5)(C) would be satisfied, and any impediment to confirmation of the debtor's Chapter 13 plan created by the creditor's secured claim would be removed.

A debtor in a Chapter 7 liquidation case is permitted by § 722 to redeem property from a lien securing a dischargeable debt, by paying the holder of the lien the amount of the allowed secured claim that is secured by the lien. Such redemption may be accomplished by paying to the creditor, in a lump sum, the lesser of the balance of the obligation to the creditor or the amount of the allowed secured claim.

Just as the Congress has given the right to a debtor in liquidation to redeem property from the lien of a secured claim, it has given a debtor in Chapter 13 the right to pay a secured claim, and obtain a release of the lien securing it, over time, out of post-petition earnings and property. In doing so, the Congress has provided protection for the creditor, in the form of the requirement that the amount to be paid to the creditor over time have a current value of not less than would be received in an immediate liquidation.

In either instance, the creditor is entitled to, and should therefore receive, no more than the value of the collateral.[13] Those courts which have sought to provide creditors with substantial additional protection, in the form of providing valuation of the collateral at retail, as do *Green* and *Rash,* and by analogy, *Balbus,* are in effect engaging in judicial legislation and imposing their view of appropriate bankruptcy policy upon litigants within their jurisdiction. That function, in this court's view, belongs solely to the Congress, and should be left to it.

This court believes that the courts which have adopted retail value as the value of the secured claim, based upon the fact that debtors propose to retain and use the vehicle, have failed to consider the fact that it is the creditor's interest in the estate's interest in the vehicle which is being valued, not the

**12.** Although evidence on such issues was not taken, it is not at all clear whether the creditor gave consideration to the fact that each of its supposed advantages bore attendant costs.

**13.** *See United Savings Ass'n v. Timbers of Inwood Forest Associates,* 484 U.S. 365, 372, 108 S.Ct. 626, 631, 98 L.Ed.2d 740 (1988). ("In subsection (a) of [§ 506] the creditor's 'interest in property' obviously means his security interest without taking account of his right to immediate possession of the collateral on default.... The phrase 'value of such creditor's interest' in § 506(a) means 'the value of the collateral.' ") This language, admittedly dictum in *Timbers,* has been quoted, and relied upon as being supportive of, virtually every decision published on this issue, including the majority and dissent in both *Mitchell* and *Balbus.*

estate's, or the debtors' interest alone, and that under no reasonable scenario could the creditor be expected to realize from the vehicle its full retail value, even if granted immediate possession of it. It also appears that those courts are bent upon punishing debtors for doing what the Code specifically authorizes them to do—retain the property and pay to the creditor over time an amount, discounted to the present, equal to the amount which the creditor would realize if permitted to liquidate the property immediately.

This court adopted the *Stauffer* compromise position in the belief that it provided courts with the flexibility required in order to give meaning, to the extent possible, to both the first and second sentences of § 506(a). Even though it may be argued that that position provides creditors with somewhat more than they could be expected to realize from an immediate liquidation of the collateral, this court is of the view that it represents a compromise which in a vast majority of cases will provide an equitable result.

Upon reconsideration of the issue, and upon review of the authorities referred to herein, this court reaffirms its adoption of the *Stauffer* rule: That the starting point for valuation of personal vehicles in Chapter 13 cases hereafter should be the average of the wholesale, or trade-in, and the retail values contained in the most current available NADA, or other equally reliable "book" providing such information for such vehicles.

Any party may request a hearing in order to put forward evidence with respect to any fact or variable, not addressed and provided for in the "book," with regard to the particular vehicle, which, if proven, could justify either an increase to or a reduction from the starting point.

The parties in this case have indicated that they will be able to do the appropriate arithmetic and address the resulting impact on debtors' proposed Chapter 13 plan upon receipt of this court's ruling. The issue of confirmation, therefore, will be addressed at the hearing rescheduled for March 14, 1995.[14]

IT IS SO ORDERED.

14. Counsel for debtors in Chapter 13 cases should disabuse themselves of any thought that this ruling will in any way diminish the disfavor in which this court holds debtors who purchase automobiles in anticipation of bankruptcy, or with knowledge that they can not afford them, the obligations on which subsequently contribute to their seeking relief under the Bankruptcy Code, and then propose plans involving retention of the vehicle, the "cram down" on the creditor of a value substantially below the amount owed to that creditor, and a minimal payment to unsecured creditors.