**In re Daniel MITCHELL and Carolyn Denise Mitchell, Debtors.**

**Bankruptcy No. 95–40655.**

United States Bankruptcy Court, M.D. Georgia, Columbus Division.

Nov. 14, 1995.

Alexander V. Pinter, Columbus, Georgia, for debtors.

Ernest Kirk II, Columbus, Georgia, for Secured Creditor, GMAC.

Kristin Smith, Chapter 13 Trustee, Columbus, GA.

## MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

On September 15, 1995, the court held a confirmation hearing in the above-referenced Chapter 13 bankruptcy case. During the hearing, General Motors Acceptance Corporation (hereinafter "GMAC"), a secured creditor in Debtors' bankruptcy case, objected to confirmation of Debtors' plan. The court invited the parties to submit briefs on whether Debtors (husband and wife) acted in good faith in proposing their plan of reorganization, whether the value stated in Debtors' plan for a 1992 Chevrolet Astro Van is appropriate, and whether the interest rate of

twelve percent (12%) per annum set forth in Debtors' plan is the appropriate interest rate which GMAC should receive on the allowed secured portion of its claim. After consideration of the briefs as well as applicable statutory law and case law, the court finds that Debtors' plan was proposed in good faith, the value of the van for confirmation purposes shall be $14,412.50, and the appropriate interest rate which GMAC is entitled to receive on the allowed secured portion of its claim shall be the "legal" rate of interest of twelve percent (12%) per annum.

On May 12, 1995, Debtors filed a joint petition under Chapter 13 of the Bankruptcy Code (the "Code"). GMAC's claim is based upon an installment sales contract secured by a 1992 Chevrolet Astro Van which was purchased by Debtor Daniel Mitchell from Bill Heard Chevrolet Company on December 30, 1994. The purchase price of the van was $16,796.78. Debtor Daniel Mitchell financed the van with GMAC for a total of $18,752.47 at an interest rate of fourteen percent (14%) per annum, repayment to be made in fifty-four (54) monthly installments of four hundred seventy-two dollars and 72/100 ($472.72) to begin on February 14, 1995, and continuing thereafter on the same day of each month until paid in full. Debtors paid two (2) installments on the van, such payments being the February 14, 1995 and March 14, 1995 payments. After filing their petition, Debtors made no further payments to GMAC for the van. The value set forth in the plan for the van is $12,663.00. Both parties agree that according to the May, 1995 issue of the N.A.D.A. Used Car Guide, the retail value of the van, including its optional equipment valued at $1,750.00, was $15,650.00. The wholesale value, including the optional equipment, was $13,175.00. The average between the retail and wholesale values was $14,412.50. At the time the van was purchased, only Debtor Daniel Mitchell was employed. Debtor Carolyn Denise Mitchell was receiving unemployment benefits in the amount of $195.00 per week, which benefits terminated in February, 1995. Presently, the plan proposes to pay zero percent (0%) to unsecured creditors.

GMAC contends that Debtors' plan cannot be confirmed since Debtors did not propose their plan in good faith. GMAC specifically refers to a provision in the plan for payment of a 1992 Chevrolet Astro Van which was purchased by Debtor Daniel Mitchell and financed by GMAC. GMAC alleges that at the time the van was purchased, Debtors did not have the intent nor the ability to pay for it. GMAC asserts that there was no unanticipated change of economic circumstances affecting Debtors between the date of purchase of the van and the date of filing of Debtors' bankruptcy petition just a few months later. GMAC also objects to the valuation of the van proposed by Debtors in their plan ($12,663.00), since the van was purchased only approximately four and one-half months before Debtors filed their bankruptcy petition. GMAC contends that the value of the van in Debtors' plan should be either the amount of the debt or at the very least, the van's retail value. Accordingly, GMAC urges the court to value its allowed secured claim at the purchase price for the van agreed to by Debtors just a few months prior to the filing of Debtors' bankruptcy petition. Alternatively, GMAC insists that the proper valuation under § 506(a) of the Code should be at a minimum the retail or replacement value since Debtors propose to retain and use the van and pay for same over the life of their Chapter 13 plan. Finally, GMAC contends that the present value of its secured claim should be calculated at fourteen percent (14%) per annum as agreed to by the parties in the installment sales contract, since the only evidence presented to the court of an interest rate was stated in the contract which was admitted into evidence during the hearing.

■ Debtors assert that their Chapter 13 plan has been proposed in good faith. They assert that at the time of purchase of the van, they intended to pay for same and believed that they had the ability to do so. Debtors point out, among other things, the testimony presented during the hearing regarding employment being sought with Columbus Regional Health Center by Debtor Carolyn Denise Mitchell around December, 1994, and her misunderstanding that her unemployment benefits could be extended be-

yond February, 1995, if by such time she had not yet secured employment.

With respect to valuation, Debtors cite a number of cases where courts applied a wholesale valuation method. *See In re Mitchell,* 954 F.2d 557 (9th Cir.1992), *cert. denied,* 506 U.S. 908, 113 S.Ct. 303, 121 L.Ed.2d 226 (1992) (wholesale value should apply as a general rule in valuing vehicles; wholesale blue book figure used to value GMAC's allowed secured claim); *In re Klein,* 10 B.R. 657 (Bankr.E.D.N.Y.1981) (court valued vehicle at amount which could be realized by GMAC on a bid market); *In re Adams,* 2 B.R. 313 (Bankr.M.D.Fla.1980) (value of security interest in vehicle was wholesale where creditor was a credit union and not an automobile dealer); *see also In re Owens,* 120 B.R. 487 (Bankr.E.D.Ark.1990) (creditor's interest in the vehicle as collateral is the interest to be protected; value of GMAC's collateral found to be amount which could be realized from selling the vehicle in a commercially reasonable manner (wholesale value)); *In re Cook,* 38 B.R. 870 (Bankr. D.Utah 1984) (purpose of valuation under § 1325(a)(5)(B)(ii) is not to measure the collateral's value to the debtor; valued vehicle at wholesale/average trade-in value since creditor bank was presumed to sell cars to dealers at wholesale). Debtors also cite a number of cases where courts applied the averaging-of-retail-and-wholesale valuation method. *See In re Madison,* 186 B.R. 182 (Bankr.E.D.Pa.1995) (starting point for valuing automobiles in a Chapter 13 case should be the average of wholesale and retail values as published in a well-recognized guide); *In re Myers,* 178 B.R. 518 (Bankr.W.D.Okla. 1995) (starting point for valuation of personal vehicles in Chapter 13 cases is the average of the wholesale and retail values in the most current N.A.D.A. book, with an opportunity for a hearing to present evidence to justify an increase or decrease from such starting point); *Ford Motor Credit v. Miller (In re Miller ),* 4 B.R. 392 (Bankr.S.D.Cal.1980) (parties stipulated correct valuation was replacement cost; court found replacement value was a value between blue book wholesale and retail values). Debtors urge the court to follow its standard practice of averaging the wholesale and retail values of a vehicle when valuing it for Chapter 13 plan confirmation purposes.

GMAC references the decision of *In re Reynolds,* 17 B.R. 489 (Bankr.N.D.Ga.1981), in which Chapter 13 debtors purchased a new vehicle only six (6) months prior to filing their bankruptcy petition. GMAC objected to confirmation and requested a valuation hearing for its collateral. *Reynolds,* 17 B.R. at 490. Judge Norton discussed the purpose of valuation, the proposed use of the property and the close proximity in time between the purchase of the vehicle and the filing of the bankruptcy petition. *Id.* at 492–93. Notwithstanding the fact that the debtors had purchased a new vehicle within six (6) months of filing their Chapter 13 case, Judge Norton found no showing of fraud or wrongful intent by the debtors contrary to § 1325(a)(3) of the Code, noting the change in the debtors' circumstances soon after purchase of the vehicle. *Id.* at 493. Judge Norton then found the appropriate value for the vehicle as the retail or replacement value as opposed to the higher purchase price, refusing to value the vehicle at a figure less than retail after noting the close proximity in time between the purchase of the vehicle and the filing of the Chapter 13 bankruptcy petition. *Id.* at 493–94.

▮▮▮ Upon review of the *Reynolds* decision, the court notes that it was decided before the Eleventh Circuit decision of *Kitchens v. Georgia Railroad Bank & Trust Co. (In re Kitchens),* 702 F.2d 885 (11th Cir. 1983). This court believes that the focus of its decision as to whether a debtor has proposed his plan in good faith under § 1325(a)(3) of the Code must be on the factors set forth in *Kitchens.* The court refuses to adopt a per se rule or "bright-line" test that a debtor's purchase of collateral at some specified period of time before filing his Chapter 13 bankruptcy petition demonstrates lack of good faith. Nevertheless, the court recognizes that the Eleventh Circuit did not intend for the factors listed in *Kitchens* to constitute an exhaustive list. The court believes that the proximity in time between a debtor's purchase of the collateral and the filing of a Chapter 13 bankruptcy petition may be seen as evidence of the lack of good

faith under § 1325(a)(3) of the Code. However, as noted by Judge Norton in *Reynolds,* an unanticipated change of economic circumstances can mitigate an apparent lack of good faith.

Upon consideration of the testimony and evidence presented during the hearing in the present case, the court finds that Debtors underwent an unanticipated change of economic circumstances which was not known to them at the time they purchased the van. Debtors testified that at the time the van was purchased, they had a large number of outstanding debts, but were paying some amount on each and believed that they could afford the extra money per month to pay for the van. They also testified that they traded in their Chevrolet Cavalier for the van as they needed a larger vehicle for transportation of their family. The court realizes that Debtor Carolyn Denise Mitchell appeared unsure as to whether she learned she would not obtain employment with Columbus Regional Health Center in December, 1994 or early January, 1995. However, the court has no reason to disbelieve her testimony that she thought, at the time of the purchase of the van, that her unemployment benefits could be extended beyond February, 1995. The court also notes that during the hearing, the Chapter 13 trustee announced that Debtor Daniel Mitchell was current in his payments to the trustee as a result of a wage deduction order. Based on such evidence along with a consideration of the factors set forth in *Kitchens,* the court does not find that Debtors acted in bad faith in proposing their Chapter 13 plan.

■■■ With respect to the valuation of the van for confirmation purposes, the court realizes that under § 1325(a)(5)(B)(ii), a creditor is entitled to receive the present value of its allowed secured claim. The amount of such secured claim is determined by § 506(a) of the Code. In the past, this court has valued vehicles for Chapter 13 plan confirmation purposes by calculating the average of the average wholesale/trade-in N.A.D.A. book value and the average retail N.A.D.A. book value, and then giving the parties the opportunity to have such amount increased or decreased by presenting evidence of special

circumstances. The legislative history of Section 506(a) of the Code indicates that valuation should be made on a case-by-case basis, and that valuation should be determined in light of the purpose of the valuation and proposed disposition or use of the collateral. H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6312; S.Rep. No. 989, 95th Cong., 2nd Sess. 68 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5854. Therefore, the court rejects any suggestion that it apply an inflexible standard of either the wholesale amount, the retail amount or the average of such two amounts. *See Johnson v. General Motors Acceptance Corp. (In re Johnson),* 165 B.R. 524 (S.D.Ga.1994) (reversing and remanding proceeding to Bankruptcy Court after deciding that valuation of collateral for Chapter 13 cramdown cannot be pigeonholed as a choice between wholesale and retail values).

Upon review of applicable case law, the court finds that there are a multitude of published decisions on the issue of the proper method of valuing an undersecured creditor's allowed secured claim. Such decisions appear to be divided among three different methods of valuation with respect to § 506(a) of the Code: 1) the collateral should be valued at wholesale value (which emphasizes the first sentence of § 506(a) of the Code and values the creditor's interest in the collateral; *see e.g., In re Mitchell,* 954 F.2d 557 (9th Cir.1992), *cert. denied,* 506 U.S. 908, 113 S.Ct. 303, 121 L.Ed.2d 226 (1992)); 2) the collateral should be valued at its retail or replacement value (which focuses on the second sentence of § 506(a) of the Code and determines value in light of the purpose of the valuation and proposed disposition or use of the collateral (measures the value of the collateral to the debtor); *see e.g., In re Reynolds,* 17 B.R. 489 (Bankr.N.D.Ga.1981); and 3) the collateral should be valued as the average between its wholesale and retail values (which involves a compromise between the creditor's interest and the debtor's interest; *see e.g., In re Myers,* 178 B.R. 518 (Bankr.W.D.Okla.1995)).

The court has reviewed, among other cases, the recent circuit court decisions cited

by counsel for GMAC, which hold that retail value is the appropriate measure for valuation of collateral in a Chapter 13 case where the debtor proposes to retain and use the collateral (each of these courts has rejected the wholesale valuation method adopted by the Ninth Circuit in *In re Mitchell*, 954 F.2d 557 (9th Cir.1992), *cert. denied*, 506 U.S. 908, 113 S.Ct. 303, 121 L.Ed.2d 226 (1992)). *See In re Trimble*, 50 F.3d 530 (8th Cir.1995); *In re Winthrop Old Farm Nurseries, Inc.*, 50 F.3d 72 (1st Cir.1995); *In re Rash*, 31 F.3d 325 (5th Cir.1994), *opinion modified on denial of reh'g*, 62 F.3d 685 (5th Cir.1995), *reh'g en banc granted*, 68 F.3d 113 (5th Cir.1995).

This court believes that the majority of the circuits which have recently adopted retail value as the value of the secured claim when the debtor proposes to retain and use the collateral have decided that the creditor's lien is to be valued in light of the purpose and use of the collateral, ignoring that fact that it is the creditor's interest in the estate's interest in the collateral which is being valued. *See In re Rash*, 31 F.3d 325 (5th Cir.1994), *opinion modified on denial of reh'g*, 62 F.3d 685 (5th Cir.1995) (Parker, R., dissenting), *reh'g en banc granted*, 68 F.3d 113 (5th Cir.1995). Notwithstanding the emerging trend to adopt a retail valuation, a consideration of the language of the applicable statute and the underlying goals of the Code as well as relevant case law leads this court to conclude that a systematic retail valuation is inappropriate.

At confirmation, the court is to consider, *inter alia*, feasibility of the plan, good faith of the debtor and distribution to unsecured creditors. With respect to the present case, the court sees no reason to deviate from the method of valuation it has been applying in confirmation-related vehicle valuations in the past. The averaging between wholesale and retail values of the vehicle provides the court with the flexibility to give meaning to both the first and second sentences of § 506(a) of the Code and will provide an equitable result in a vast majority of cases. *See In re Madison*, 186 B.R. 182 (Bankr.E.D.Pa.1995) (starting point for valuing automobiles in a Chapter 13 case should be average of wholesale and retail values as published in a well-recognized guide); *In re Hoskins*, 183 B.R. 166 (Bankr.S.D.Ind.1995) (proper valuation of vehicle to be retained for personal use by Chapter 13 debtors in order to determine extent of secured creditor's claim was average of wholesale and retail values); *In re Myers*, 178 B.R. 518 (Bankr.W.D.Okla.1995) (starting point for valuation of personal vehicles in Chapter 13 cases is the average of the wholesale and retail values in the most current N.A.D.A. book, with an opportunity for a hearing to present evidence to justify an increase or decrease from such starting point); *In re Rowland*, 166 B.R. 172 (Bankr. N.D.Fla.1994) (where debtors proposed to retain and use mobile home, starting point for valuation of undersecured creditor's allowed secured claim was average between wholesale and retail values, with any adjustments then made, if appropriate, due to special circumstances); *In re Stauffer*, 141 B.R. 612 (Bankr.N.D.Ohio 1992) (adopted average of book wholesale and retail values in valuing GMAC's secured claim in vehicle); *In re McLeod*, 5 B.R. 520 (Bankr.N.D.Ga.1980) (court refused to value vehicle retained by Chapter 13 debtor at replacement cost or retail value as urged by creditor GMAC; court valued vehicle between N.A.D.A. retail and wholesale values); *Ford Motor Credit v. Miller (In re Miller)*, 4 B.R. 392 (Bankr. S.D.Cal.1980) (parties stipulated correct valuation was replacement cost; court found replacement value was a value between blue book wholesale and retail values). In addition, the court does not find any evidence of special circumstances to warrant the adjustment upward or downward of such amount, notwithstanding the close proximity in time between the purchase of the van and the filing of the bankruptcy petition, inasmuch as the court has determined that Debtors did not act in bad faith in proposing their Chapter 13 plan. Therefore, the court finds that the amount of GMAC's allowed secured claim is $14,412.50, the amount determined to be the value of the van.

■ With respect to the issue of the interest rate that GMAC should receive on the allowed secured portion of its claim, the court recognizes the decision of *Warehouse Home Furnishings Distributors, Inc. v. Richards (In re Richards)*, 106 B.R. 762 (Bankr.

M.D.Ga.1989), in which Judge Hershner found that the creditor was entitled to interest under the Chapter 13 cramdown provisions at the state legal rate of interest and not the contract rate of interest. Not unlike the creditor in *Richards,* GMAC in the present case introduced no evidence of any other prevailing interest rate for any financial instrument other than that provided in the contract between the parties. Debtors have agreed to pay twelve percent (12%) per annum. Moreover, since the court did not find that Debtors acted in bad faith in proposing their Chapter 13 plan, payment by them to GMAC of the contract rate of interest would not be necessary or appropriate to evidence good faith. Therefore, the court finds that the appropriate interest which GMAC is entitled to receive on the allowed secured portion of its claim is the state legal rate of interest of twelve percent (12%) per annum. *See* Ga.Code Ann. § 7–4–12 (Michie 1989).

The parties have indicated that upon the court rendering its decision in this matter, they will address the resulting impact on Debtors' Chapter 13 plan. The issue of confirmation therefore will be addressed at the hearing which has been rescheduled for November 17, 1995.